**Dated: May 27, 2016**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 15-14689-JDL |
| Nikki Marie Waldrop, | ) | Ch. 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Nikki Marie Waldrop, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. 16–1015-JDL |
| | ) | |
| Discover Bank, and | ) | |
| Stephen Bruce, Esq., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER DENYING
<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

This matter comes on for consideration upon *Defendant Discover Bank's Amended Motion to Dismiss Adversary Complaint*, filed on February 26, 2016, [Doc. 13], *Defendant*

*Stephen Bruce Esq.'s Amended Motion to Dismiss Adversary Complaint*, filed on March 23, 2016, [Doc. 21], (collectively, the "*Motions*"), the Plaintiff's *Response to Discover Bank's Motion to Dismiss* filed on March 14, 2016, [Doc. 17], and the Plaintiff's *Response to Stephen L. Bruce, Esq.'s Amended Motion to Dismiss* filed April 4, 2016, [Doc. 24], (collectively, the "*Response*"). This is an adversary proceeding brought by Plaintiff/Debtor, Nikki Marie Waldrop, ("Waldrop"), alleging in her *Complaint* that Discover Bank and its attorney, Stephen Bruce, ("Bruce"), violated the automatic stay by "staying" but not releasing a bank garnishment filed pre-petition. Discover Bank and Bruce have filed their *Motions* pursuant to Fed.R.Civ. P. 12(b)(6), made applicable to these proceedings by Fed. R. Bankr. 7012[1], seeking dismissal of Waldrop's *Complaint* for failure to state a claim upon which relief can be granted.

This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O), and the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. §1334. The Court has reviewed the *Motions*, the *Response* and the record in this case and, for the reasons set forth below, hereby denies Defendants' *Motions to Dismiss*. This *Memorandum Opinion and Order* constitutes the Court's findings of fact and conclusions of law pursuant to Rules 7052 and 9014.

The principal issue before the Court is to determine whether Waldrop has stated a claim against Discover Bank and Bruce for a willful violation of the automatic stay by Discover Bank, acting through Bruce, instructing Waldrop's garnishee bank to hold the garnished funds "subject to further order of the court", but taking no further action to

---

[1] Hereinafter, referenced to the Federal Rules of Bankruptcy Procedure will be in the following format: "Rule _____."

2

release the funds, have the Bankruptcy Court lift the automatic stay or determine the parties' interests in the funds. Discover Bank also asserts in its *Motions* that Waldrop cannot assert a claim for violation of the stay because she failed to either include/disclose the underlying state court litigation giving rise to the garnishment in either her Bankruptcy Schedules or in her Statement of Financial Affairs.[2]

### Factual Background

1. On October 5, 2015, default judgment was entered in the state court case styled *Discover Bank v. Nikki Waldrop*, Cleveland County Case No. CS-2015-1346, against Waldrop in the amount of $5,977.13 with interest, costs, and attorney's fees in the amount of $896.57, (the "Judgment").

2. On December 3, 2015, Discover Bank filed and issued a garnishment to Waldrop's Bank, J.P. Morgan Chase, ("Chase"), seeking to enforce the Judgment.

3. On December 9, 2015, (the "Petition Date"), Waldrop filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[3]

---

[2] Though nowhere denominated as such in the *Motions*, such a defense is generally regarded as one of "judicial estoppel". "Judicial estoppel is particularly appropriate where a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Eastman v. Union Pac. Ry. Co.*, 493 F.3d 1151, 1158 (10th Cir. 2007) (citing *Jethro v. Omnova Solutions, Inc*. 412 F.3d 598 (5th Cir. 2005); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.").

[3] There is a significant omission as gleaned from the record as to when the garnishment was served upon J.P. Morgan Chase Bank. Discover Bank asserts in its *Motions* that the "garnishment was filed, issued and *served* on the financial institution *prior* to the bankruptcy filing". [*Motions*, pg. 1] (emphasis added). Waldrop states in her Response that, "Based on Chase's answer, there appears to be a question as to whether the garnishment was served on December 8, 2015, or December 9, 2015". [*Response*, pg. 4, n. 4]. Chase's Garnishment Answer is not included in the Bankruptcy Court record nor is it available online from the Oklahoma Supreme Court Network. The bankruptcy was filed 9:34 a.m. CST, on December 9,

4. On December 11, 2015, Waldrop's attorney sent a fax to Discover Bank's attorney, Defendant Stephen Bruce, asking that the funds on deposit with Chase subject to the garnishment be released. [*Motions*, Doc. 13, pg. 3].

5. On December 15, 2015, Chase filed an Answer to the garnishment in the state court case stating that it was holding $1,033.64 in Waldrop's account.

6. On December 16, 2015, Discover Bank, through Defendant Bruce, wrote Chase and advised it that it should "hold the garnishment funds until further order of the court". [*Complaint*, ¶ 10, *Motions,* pg. 1,4; *Response*, pg. 4].

7. On or about January 14, 2016, counsel for Waldrop called Defendant Bruce "in an attempt to resolve this matter. The call was not returned". [ *Complaint,* ¶ 16].

8. No further action by either Waldrop or Discover Bank relative to the funds held by Chase was apparently taken until the filing of Waldrop's *Complaint* on January 27, 2016. [Doc. 1].

9. In Schedule E/F, Creditors Who Have Unsecured Claims, filed with her bankruptcy on December 9, 2015, Waldrop listed Discover Bank as an unsecured creditor and included it on the mailing matrix. [Doc.1, pg. 23; Doc. 2]. In the Statement of Financial Affairs for Individuals Filing for Bankruptcy, filed December 9, 2015, Waldrop did not disclose in ¶ 9 the state court litigation with Discover Bank or in ¶ 10 that any of her property had been garnished, seized or levied within one year preceding the filing of bankruptcy. [Doc. 1, pg. 38].

---

2015. If the garnishment was served after the exact time of the bankruptcy filing, any garnishment lien would be deemed void. Thus timing is important as Discover Bank argues that its lien status absolved it or the garnishee from having to turn over the funds.

10. Waldrop's first meeting of creditors was conducted on January 27, 2016. On February 29, 2016, Waldrop filed her Amended Schedules in which she did disclose in Schedule A/B the claim for stay violation as an asset and in Schedule C that the garnished funds in her checking account at Chase were claimed as exempt. [Doc. 20, pg. 9, ¶ 33, and pg. 12]. Waldrop's Amended Statement of Financial Affairs disclosed the state court litigation and the adversary proceeding with Discover Bank. [Doc. 20, pg. 15, ¶ 9] but did not disclose in the Amended Statement of Financial Affairs that any funds had been garnished within 1 year proceeding bankruptcy. [Id. ¶ 10].

## Standards for a Motion to Dismiss

A motion to dismiss for failure to state a claim is governed by Fed R. Civ. P. Rule 12(b)(6), made applicable to adversary proceedings by Rule 7012. In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). "A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.1955, 167 L.Ed.2d 929 (2007). Under Twombly, in order to survive a motion to dismiss the complaint must contain enough facts to state a cause of action that is "plausible on its face". 550 U.S. at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662, 778, 129 S.Ct.1937, 173 L.Ed.2d 868 (2009), the Supreme Court defined "plausibility" by the following:

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

5

> that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'

*Id*. at 678, citing *Twombly*. See also, *Lamar v. Boyd*, 508 Fed. Appx. 711 (10th Cir. 2013) ("A Plaintiff is not required to set forth a prima facie case for each element, [but] is required to set forth plausible claims"); *Cook v. Baca*, 2013 WL 828814 (10th Cir. 2013). In applying this standard, the Tenth Circuit has directed the trial court to "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215, n.2 (10th Cir. 2007). This is accomplished in a two-step process. First, the Court must identify pleadings that are conclusory and, therefore, not entitled to a presumption of truth. Second, the Court must assume that well-pleaded allegations are true. Examining the factual allegations alone, the Court must determine whether those allegations give rise to a plausible claim for relief that Discover Bank willfully violated the automatic stay.

Generally, if the court considers matters outside the pleadings, the Court must convert a motion to dismiss into a motion for summary judgment . See Rule 12(b); *Utah Gospel Mission v. Salt Lake City Corp*. 425 F.3d 1249, 1253 (10th Cir. 2005). A court may, however, appropriately consider matters that are subject to judicial notice without having to treat a motion to dismiss as a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1265, n. 24 (10th Cir. 2006) (noting that "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion

6

for summary judgment."). In the present case, the Court has taken judicial notice of the statements and schedules and what is on the docket sheet filed in the bankruptcy case as well as matters filed in the state court proceeding[4] for purposes of determining what cause of action, if any, has been stated but also whether such potential cause of action was scheduled or otherwise disclosed therein as an asset of the estate going to the issue of whether Waldrop is judicially estopped from asserting them.

## Discussion

### I. Violation of the Automatic Stay

Section 362 of the Bankruptcy Code[5] generally provides for the automatic stay of any and all proceedings against the debtor once a bankruptcy petition is filed. Pursuant to §362(a), "except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities of-

> (1) the commencement or *continuation*, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . .."

---

[4] *United States v. Ahidley*, 486 F.3d 1184,1192 n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. Okla. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie ,* 2006 WL 2792671 (W.D. Okla. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 2003 WL 22422416 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R. Evid. 201).

[5] Hereinafter, references to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, will be by section number only.

The consequences of violating the automatic stay provisions are set forth in §362(k), which provides that:

> " 2.(1) Except as provided in paragraph (2) an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on action taken by an entity in in the good-faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages."

Additionally, a party injured by a willful violation of the stay can seek sanctions or contempt of court under §105(a).  See *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir. 1990).

In order for Waldrop to successfully recover damages under § 362(k)(1), she has the burden of establishing the following elements by a preponderance of the evidence: (1) that a bankruptcy petition was filed; (2) that she is an "individual" under the automatic stay provision; (3) that the creditor had notice of the petition; (4) that the creditor's actions were in willful violation of the stay; and, (5) that she is entitled to a form of relief provided by § 362(k).  It appears to be little doubt that the first three elements are present here.  The critical question is whether there was a *violation* and whether the violation was *willful*.  Discover Bank argues that it never took any *action* to continue or enforce the garnishment; rather, it simply sought to maintain the *status quo* by advising Chase to hold the funds pending further order of the court, thus no violation of the stay occurred.

The plain language of § 362(a)(1) enjoins the "the . . . continuation . . . of a judicial . . . proceeding against the debtor", and "if one is enjoined from continuing a judicial

proceeding against the debtor, *one is obliged to discontinue it."* In re Mitchell, 66 B.R. 73, 75 (Bankr. S.D. Ohio 1986). Recognizing this language, courts have emphasized the obligation incumbent upon the creditor to take necessary steps to halt or reverse any pending state court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including the garnishment, repossession of an automobile, foreclosure of a mortgage or judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition. See e.g., *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 384 (Bankr. E.D. Pa. 1988); *In re Baum*, 15 B.R. 538, 541 (Bankr. E.D. Va. 1981). This responsibility is placed on the creditor and not on the debtor or the trustee because "to subject the debtor to the financial pressures the automatic stay was designed to temporarily abate would render the contemplated breathing spell from his creditors illusory". *In re Miller*, 22 B.R. 479, 481 (D. Md. 1982).

Discover Bank urges that advising the garnishee to hold the funds pending further action of the court was not action that could violate the automatic stay but only to maintain the status quo. Courts, however, have been quick to realize that creditor inaction can often be as disruptive to the debtor as affirmative collection efforts. *In re Elder*, 12 B.R. 491, 494 (Bankr. M. D. Ga. 1981) ("No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay."); *In re Aponte*, 82 B.R. 738, 743 (Bankr. E.D. Pa.1988) ("creditor inaction can often be as disruptive to the debtor as affirmative collection efforts . . . thus inaction can be the basis for the imposition of damages under § 362(k)"); *In re Outlaw*, 66 B.R. 413 (Bankr. E.D. N.C. 1986) (automatic stay obliged creditor to put a halt to the execution process which he had set in motion prior to the filing of the

9

bankruptcy petition; "Creditor inaction can be as disruptive to a debtor's affirmative collection efforts .").

"A creditor who has initiated collection efforts without knowledge of a bankruptcy petition has an affirmative duty to restore the status quo without the debtor having to seek relief from the bankruptcy court." *In re Pulliam*, 262 B.R. 539, 543 (Bankr. D. Kan. 2001); *In re Miller*, 10 B.R. 778, 780 (Bankr. D. Md. 1981, *aff'd* 22 B.R. 479 (D. Md 1982). This duty arises from the language of § 362(a) which stays the commencement or *continuation* of a judicial proceeding against the debtor. "Courts presented with this issue have construed this language to mean, at whatever stage the garnishment is, the creditor's attorney must do everything he can to halt the proceeding." *Morris v. St. Joseph Medical Center, Inc. (In re Fisher)*, 194 B.R. 525, 532 (Bankr. D. Kan. 1996); *Elder*, 12 B.R. at 494-95; *Baum*, 15 B.R. at 541. "There can be little question that the continuation post-petition of the garnishment proceeding against the debtor is a violation of the automatic stay." *In re Williams-Nobles*, 459 B.R. 242, 246 (Bankr. E.D. Va. 2011) (citing *In re Manuel*, 212 B.R. 517, 518 (Bankr. E.D. Va. 1997). "To hold otherwise would be to eviscerate the power and purpose of the stay which is designed to protect debtors from collection activity during the pendency of the case in bankruptcy." *Pulliam*, 262 B.R. at 542.

When it comes to the issue of a garnishment, there is a division of authority as to whether a judgment creditor's obligation to take "affirmative action" to restore the status quo compels the creditor to dismiss or release the garnishment upon learning of the bankruptcy.[6] This Court need not hold whether a garnishing creditor has an obligation to

---

[6] Compare *In re Pulliam*, supra (holding creditor has affirmative duty to release the garnishment as soon as creditor learns of the debtor's pending bankruptcy); *Knaus v.*

immediately seek dismissal or release of the garnishment. What the Court does find is that a garnishing creditor has an affirmative duty to take affirmative action, whether that be to release the garnishment or attempt to resolve the garnishment issue in court in an expeditious manner. "Dismissal is not the creditor's only alternative for complying with the automatic stay; rather, the creditor can satisfy its duty either by dismissing the garnishment or by staying it." *In re Buchanan*, 273 B.R. 749 (Bankr. M. D. Ga. 2002 ); *In re Kuzniewski*, 508 B.R. 678 (Bankr. N.D. Ill. 2014).

In the present case, Discover Bank's counsel was personally notified of the bankruptcy on December 11, 2015, two days after the bankruptcy was filed. On December 16, 2015, Discover Bank's counsel advised Chase to hold the garnished funds pending further order of the court. At this point, the Court cannot say that Discover Bank was in willful violation of the stay, but further action was required. While Discover Bank was not necessarily obligated to accede to Waldrop's demand to immediately release the funds (which were in the possession of Chase, not Discover Bank), *it*, Discover Bank, and not the Debtor was obligated to take some affirmative action to begin the process by which the issues of the automatic stay and its lien rights might be timely adjudicated. Discover Bank, however, chose to "stonewall" Waldrop's claim to the funds for approximately six weeks

---

*Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773 (8th Cir. 1989) (duty to turn over property not contingent upon predicate violation of the stay, any order of the bankruptcy court or any demand of the creditor); *Bank of America v. Adomah (In re Adomah)*, 368 B.R. 134, 139 (E.D. N.Y. 2007) (holding that garnishee bank was under a duty to immediately release funds claimed as exempt; *Roche v. Pep Boys, Inc. (In re Roche )*, 361 B.R. 615 , 621-22 ( Bankr. N.D. Ga. 2005) (holding that garnishing creditor has an affirmative duty to release pre-petition garnishment); *with Chicago Painters & Decorators Pension, Health & Welfare & Deferred Savings Plan Trust Funds v. Cunha,* 121 B.R. 232, 233 (N.D. Ill.1990) (holding that court would not require formal dismissal of the garnishment proceedings and would not take any action in furtherance of the proceedings until the bankruptcy proceedings were resolved).

11

following bankruptcy before Waldrop filed the present adversary proceeding. The Court does not consider this delay as meeting a judgment creditor's obligation to take affirmative action to resolve a dispute to garnished funds.

## II. Discover Bank's Lien Rights[7]

Discover Bank asserts that upon service of the garnishment on Chase (1) Waldrop no longer had any rights to the funds so that the funds were not property of the estate subject to the automatic stay and, (2) it obtained a garnishment lien which would have been lost had it voluntarily relinquished possession of the garnished funds. It is doubtlessly true that an Oklahoma garnishment lien attaches at the time the garnishment summons is served upon the garnishee. *DPW Employees' Credit Union v. Tinker Federal Credit Union*, 1996 OK CIV APP 106, 925 P.2d 93; *First Mustang State Bank v. Garland Bloodworth, Inc.,* 1991 OK 65, 825 P.2d 254, 259; 12 O.S. § 1185.

Discover Bank is incorrect, however, in asserting that Waldrop had no rights in the funds upon creation of the garnishment lien. "Service of the garnishment summons does not transfer title of the property to the judgment creditor/garnishnor." *DPW Employees Credit Union v. Tinker Federal Credit Union,* 925 P.2d at 95; *Frontier Federal Savings and Loan Association v. Commercial Bank, NA*, 1990 OK CIV APP 105, 806 P.2d 1140. Section 541 defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541(a)(1). The fact that Discover Bank may have obtained a prejudgment garnishment lien does not preclude

---

[7] This discussion of Discover Bank's claim of garnishment lien rights carries with it a large caveat: the discussion assumes the garnishment was served on Chase prior to the filing of the bankruptcy. If it was served post-petition any lien would be void, and any discussion of lien rights as a potential defense for Discover Bank would be moot.

Waldrop's interest from becoming property of the estate property subject to the lien or encumbrance. *In re Fisher*, 194 B.R. 525 (Bankr. D. Kan. 1996); *In re Williams*, 460 B.R. 915 (Bankr. N.D. Ga. 2011) (holding that funds in possession of state court pursuant to writ of garnishment served pre-petition were included in property the estate). The very existence of § 362(d), and the need for the procedure it sets forth to allow secured creditors to obtain their collateral, refutes any argument that lien property is no longer property of the estate and subject to the automatic stay. *In re Interstate Motor Freight System, IMFS, Inc.*, 86 B.R. 500, 504-05 (Bankr. W. D. Mich.1988).

While the garnished funds *were* subject to the automatic stay, the funds were also subject to any lien rights of Discover Bank. Does the claim of such lien rights vitiate Discover Bank's obligation that it might otherwise have to take affirmative action with regard to those funds? Courts have held that a creditor should not be required to relinquish a valid lien to avoid sanctions for violating the automatic stay and that such interpretation could violate the creditor's right to due process. See e.g., *In re Olivas*, 129 B.R. 122 (Bankr. W.D. Tex. 1991); *In re Miller*, 2011 WL 6217342 (Bankr. D. Colo. 2011) (unpublished) ("the better view is that a creditor's refusal to release garnished funds, to the potential detriment of his lien rights in those funds, does not violate the automatic stay"); *In re Giles*, 271 B.R. 903, 906 (Bankr. M.D. Fla. 2002) ("where a creditor's lien might be destroyed if its collateral were released, the creditor must be provided adequate protection before being required to essentially turn over the account that is the subject of its lien by releasing its garnishment.").

In the Court's view, those cases preserving the garnishing creditor's lien rights do

13

not mean that Discover Bank's failure to take affirmative action immunizes it from a claim that it violated the automatic stay. The rationale of those cases is that "where a creditor's lien might be destroyed if its collateral were released, the creditor must be provided adequate protection *before being required to essentially turn over the account* that is the subject of its lien by releasing its garnishment." *In re Giles,* 271 B.R. at 906 (emphasis added)*; In re Bernstein*, 252 B.R. 846, 850 (Bankr. D. D.C. 2000) ("The right of adequate protection cannot be rendered meaningless by an interpretation of § 362(a)(3) . . . that would compel turnover even *before* an opportunity for the court's granting adequate protection.") (emphasis added).

As stated previously in this Opinion, the Court is not saying that in these factual circumstances Discover Bank had to immediately dismiss the garnishment or seek to release the funds (which Chase, not Discover Bank, was holding). The Court, is also not saying, as Discover Bank contends Waldrop is arguing, that "the mere filing of the petition obligates a judgment creditor to abandon its lien rights and release the funds". [*Motion*, pg. 7]. That clearly is not the law. *In re Benson*, 262 B.R. 371 (Bankr. N.D. Tex. 2001) ("a valid lien or security interest on exempt property securing a prepetition debt remains enforceable unless the lien is void or voidable pursuant to one of a number of avoidance provisions in the Bankruptcy Code.").

Discover Bank did, however, have the obligation to take timely, affirmative action to seek appropriate relief from the bankruptcy court, either by lifting the stay, if it thought appropriate, or by enforcing its purported lien rights. It was not sufficient that Discover Bank wait for Waldrop or Chase to get the bankruptcy court to take appropriate action with

regard to the funds.  "The purpose of the automatic stay is to protect the debtor and to place the burden on the *creditor* if it is to continue to assert its rights." *In re Roche*, 361 B.R. 615 (Bankr. N.D. Ga. 2005)*; Rutherford v. Auto Cash, Inc. (In re Rutherford* ), 329 B.R. 886, 892 (Bankr. N.D. Ga. 2005) ("If Congress had intended to permit secured creditors to withhold property of the estate until the bankruptcy court made a determination of adequate protection and order turnover, Congress could have provided a specific exception within § 362 for such actions.").

Discover Bank and Bruce may well have believed, as they now appear to argue, that the preservation of their lien rights could not make any inaction on their part a willful violation of the stay. But a violation of § 362(k)(1) is demonstrated by the "debtor establishing by a  preponderance of the evidence that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required". *In re Johnson*, 501 F.3d 1163, 1172  (10th Cir. 2007); *Brown v.  Chestnut  (In re Chestnut)*, 422 F.3d 298, 302 (5th Cir. 2005).  "Accordingly, a creditor's good faith belief that it had a right to the property is irrelevant." *Johnson,* 501 F.3d at.1172.  Discover Bank's assertion of its lien rights, standing alone and without some further action on its part, does not make any violation of the stay not *willful* under motion to dismiss standards.

### III. Judicial Estoppel

Movants assert that Waldrop is precluded from asserting any claims in this adversary proceeding by virtue of not having listed in her schedules or statement of financial affairs the underlying state court litigation and her potential claims asserted in the present adversary.  While not denominated as such, Discover Bank's and Bruce's claims

in this regard are one of "judicial estoppel". The doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808 (2001). As stated by the Tenth Circuit in *Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151,1156 (10th Cir. 2007), "while the circumstances under which a court might invoke judicial estoppel will vary", three factors "typically inform the decision whether to apply the doctrine in a particular case":

> "First, a party's subsequent position must be 'clearly inconsistent' with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled'. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped."

In the bankruptcy context, judicial estoppel is generally applied in circumstances where a debtor has omitted an asset from the bankruptcy estate and later seeks to assert a claim in a separate tribunal based upon that claim. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598 (5th Cir. 2005); *Hamilton v. State Farm Fire and Cas. Co.,* 270 F.3d 778 (9th Cir. 2001). In a number of cases, the Tenth Circuit has addressed the use of judicial estoppel against a plaintiff who failed to include a lawsuit as an asset on the bankruptcy schedules. See *e.g., Paup v. Gear Products, Inc.*, 327 Fed. Appx. 100,106-08 (10th Cir. 2009); *Ardese v. DCT, Inc.*, 280 Fed. Appx. 691, 694-97 (10th Cir.2008); *Eastman*, 493 F.3d at 1157-60. The Tenth Circuit has consistently affirmed district court's use of judicial estoppel when the bankruptcy proceedings have closed. *Paup*, 327 Fed. Appx. at 106-

108; A*rdese*, 280 Fed. Appx. at 694-97; *Eastman*, 493 F.3d at 1157-60. In some cases, the Tenth Circuit affirmed application of the doctrine when the bankruptcy proceedings were still underway but the bankruptcy court had already approved a plan of reorganization based on the plaintiff's misrepresentations about her assets. *Higgins v. Potter*, 416 Fed. Appx. 731, 733-34 (10th Cir. 2011). Lastly, courts have applied judicial estoppel where a debtor "only corrected her omission after the defendant filed a motion for summary judgment based on judicial estoppel, without ever presenting any evidence to show that the omission was inadvertent". *Id.* at 733; *Barker v. Asset Acceptance, LLC,* 874 F. Supp.2d 1062 (D. Kan. 2012).

In support of their non-denominated "judicial estoppel" defense Discover Bank and Bruce place primary reliance upon the case of *In re Drexel Burnham Lambert Group, Inc.*, 160 B.R. 508 (S.D.N.Y. 1993). That case Is factually far removed from the present one. There the issue is whether the bankruptcy court erroneously granted partial summary judgment to the creditor. Summary judgment denying the debtor standing from asserting claims was appropriate because he attempted to assert them five years after his discharge in bankruptcy in which he never alerted the bankruptcy Court or the creditors of the existence of the potential claims.

None of the situations in which judicial estoppel is appropriate apply in this case. This case is not closed. Being a Chapter 7, there is no plan of reorganization. Though Waldrop failed to disclose the underlying state court litigation with Discover Bank in her initial Schedules and Statement of Financial Affairs filed with the Petition on December 9, 2015, she did amend her Schedules and Statement of Financial Affairs, filed on February

17

29, 2016, to reflect the state court litigation. While the filing of the amendments was three days after Discover Bank filed its present Motion and may have been in response thereto, the Court does not find either the elements or rationale for judicial estoppel to be present.

First, the underlying state court litigation in which Waldrop was a defendant was a liability and not an "asset" of the estate from which Waldrop would benefit by not disclosing. The Bankruptcy Code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims. 11 U.S.C. § 521. The statement of financial affairs requires a debtor to disclose her involvement in pending lawsuits. Second, Waldrop didn't disclose the Discover Bank state court litigation in her original Statement of Financial Affairs, but she did schedule the debt and included Discover Bank on the mailing matrix. Waldrop filed her adversary proceeding on January 27, 2016, a month before Discover Bank filed its *Motion* in which it raised the issue of judicial estoppel. Contrary to attempting to conceal its claim against Discover Bank in another forum from creditors and the trustee, Waldrop brought suit against Discover Bank in the bankruptcy court prior to amending her schedules and prior to Discover Bank filing its *Motion*.

Third, while Discover Bank asserts that Waldrop "failed to identify the state court action, the garnishment from which that action arose and her current adversary counterclaim . . . which existed at the time she filed both her original schedules and amended schedules", any claim for wrongful garnishment did not exist at the time of the filing of bankruptcy but would have arisen as a result of the bankruptcy being filed. Waldrop did not, and could not, assert a counterclaim for wrongful garnishment in the state court litigation because the garnishment hadn't even arisen until after judgment had been entered and the bankruptcy filed.

Fourth, Waldrop's counsel had already demanded within days of the bankruptcy, both in writing and attempted to do so by phone, that Discover Bank release the garnishment. Discover Bank can hardly argue that it was not on notice of a potential claim against it by Waldrop. Fifth, and perhaps most importantly, a factual issue exists as to whether Waldrop's initial bankruptcy schedule omissions were indeed the result of mistake or inadvertence or whether she concealed facts to the detriment of the trustee and the creditors. See e.g., *Eubanks v. CBSK Financial Group, Inc*. 385 F.3d 894 (6th Cir. 2004); *Eastman*, 493 F.3d at 1158. This factual issue is not resolvable on a motion to dismiss.

### IV. The Garnished Funds Were Not Claimed as Exempt.

Discover Bank contends that even if Waldrop sought to avoid Discover Bank's garnishment lien pursuant to §522 (which she has not yet asserted), she (1) can claim no more than $200 as exemption because that is the amount she included as exempt in her schedules or (2) recover nothing because the $1,033.64 "captured" by the garnishment was less than the non–exempt 75% of her earnings within the last ninety days calculated under applicable Oklahoma law. 12 O.S. §1171.1 and 31 O.S. §1(18)(A).

The Court views Discover Bank's claim in this regard as objecting to the amount of damage which Waldrop may have sustained in the event that the court determines a willful violation of the stay occurred. While not entirely clear, Discover Bank appears to be saying that at most Waldrop might be able to recover $200, but in all probability she is entitled to nothing even if there were a stay violation. This Court is not yet determined to rule whether there was or was not a willful stay violation, but only whether Waldrop has stated a plausible claim for the same under motion to dismiss standards. Waldrop, as debtor, bears

19

the burden of proving actual damages with reasonable certainty. *In re Gagliardi*, 290 B.R. 808 (Bankr. D. Colo. 2003). It may be the only actual damages which Waldrop is able to show are attorneys fees attributable to the stay violation. Under § 362(k), attorney's fees may be awarded without proof of other compensable damages: that section stating that an individual injured by any willful violation of the automatic stay "shall recover actual damages, *including costs and attorney's fees"*. "The use of 'including' indicates that Congress considered fees as an example of actual damages by itself." *Gagliardi,* 290 B.R. at 820; *In re Escobedo*, 513 B.R. 605 (Bankr. D. N.M. 2014) ("Once a willful stay violation is proven, the Court *must* award actual damages, including costs and attorney's fees. § 362(k)(1). Award of these damages is mandated by § 362(k)(1). The court has no discretion to withhold an award of compensatory damages for violation of the automatic stay."). The issue of damages is therefore left as an evidentiary matter should Waldrop prevail on the merits.

## Conclusion

Based upon the foregoing, the Amended Motions to Dismiss of both Defendants, Discover Bank, N.A., and Stephen Bruce, [Docs.13 and 21] are hereby **DENIED**, and said Defendants are hereby granted fifteen (15) days from the entry of this ORDER, or until June13, 2016, within which to file their answers.

# # #